**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ANNIE AGNEW and NAYSHAWN EDWARDS, as Independent Co-Administrators of the Estate of NATHANIEL (NATE) EDWARDS, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No:    3:18-cv-50035 |
| v. | ) ) | Judge Ian Johnston |
| SERGEANT JONATHAN CATER, Individually and The CITY OF ROCK FALLS, | ) ) ) ) | Magistrate Margaret J. Schneider JURY DEMANDED |
| Defendants. | ) | |

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

In support of their Motion for Summary Judgment, brought pursuant to Federal Rule of Civil Procedure 56, DEFENDANTS, SERGEANT JONATHAN CATER and THE CITY OF ROCK FALLS, present the following Statement of Material Facts, pursuant to local Rule 56.1:

**The Pursuit on January 26, 2018**

1.      On January 26, 2018, Rock Falls police officer Dustin Sugars was on patrol when he heard a dispatch for a suspicious subject.   [See deposition of Dustin Sugars attached hereto as A, pp. 13:21 – 14:13, See also video footage of the incident attached hereto as Exhibit F.]

2.      Subsequently, Officer Sugars encountered a white Cadillac that was, amongst other things, weaving back and forth from line to line down the road going 41 mph; the driver of the white Cadillac was later identified as the decent, Nathaniel Edwards [Ex. A, pp. 14:14 – 17:8, Ex. F.]

3.      After following Mr. Edwards for less than a mile, Officer Dustin activated his lights and called in the license plate of the vehicle. [Ex. A, pp. 18:7 – 18, 28:3 – 22, Ex. F.]

4.      Mr. Edwards did not pull over so Officer Sugars, while in pursuit, called for back-up and Whiteside County Sheriff Deputy Coutts joined the pursuit, as did Defendant Cater and his trainee, Officer Riley. All activated the emergency lights on their squad cars.   [Ex. A, pp. 21:17 – 22:24, 25:12 – 19, See Sergeant Cater's deposition attached hereto as Exhibit B, pp. 45:1 – 24; Deposition of Officer Riley attached hereto as Exhibit C, p. 81:3 – 9; Deposition of Sean Coutts attached hereto as Exhibit D, pp. 9:21 – 10:1, Ex. F.]

5.      Mr. Edwards fled from the police at a slow rate of speed by circling a residential area of Rock Falls, and eluded the police by running stop signs and driving around police blockades, until he pulled into a driveway at 1304 Franklin Street in Rock Falls, IL.   [Ex. A, pp. 20:1 – 27:15, 32:17 – 33:4, Ex. B, pp. 46:5 – 47:6, 48:17 – 50:13, 117:8 – 119:6, Ex. C, pp. 30:7 – 31:4, Ex. D, pp 37:5 – 39:9, Ex. F.]

6.      Although parked, Mr. Edward's vehicle was still running.   [Ex. A, p. 45:14 – 15, Ex. O, pp 23:9 – 24:6.]

7.      Due to the circumstances surrounding this traffic stop, Deputy Coutts believed it was a high risk and dangerous traffic stop.   [Ex. D, 91:9 – 12, 102:11 - 23]

**1304 Franklin Avenue**

8.      Due to Mr. Edwards' failure to stop, Officer Sugars approached the vehicle with his duty weapon drawn, thinking that Mr. Edwards would flee on foot.   [Ex. A, 32:7 – 16, 34:13 – 22, 44:23 – 45:3, Ex. F.]

9.      Officer Sugars saw a female in the middle of the driveway coming from the garage; Officer Sugars and Defendant Cater ordered her to go back into the residence and she complied.

[Ex. A, pp. 36:5 – 37:7, 39:3 – 14, Ex B, p. 63:17- 20, Ex. F.]

10.     While Officer Sugars stood at approximately the driver's side door of the vehicle, he loudly and authoritatively ordered Mr. Edwards several times to get out of the car/to open the car door; Mr. Edwards did not comply. [Ex. A, pp. 39: 18 – 44:13, 46:6 – 22, Ex. F, Deposition of Alvin Russell attached hereto as Exhibit J, pp. 28:20 – 33:19, Deposition of Jacob Anderson attached hereto as Exhibit K, pp. 22:6 – 14, 24:21 – 25:24, Deposition of Jordan Babbitt attached hereto as Exhibit L, pp. 23:15 – 24:2, 30:12 – 31:4, 36:21, 53:8 -9, Deposition of Ethan Smit attached hereto as Exhibit M, pp. 23:19: - 25:16, 28:8 – 31:5, Deposition of Nicole Sanders attached hereto as Exhibit O, pp 23:9 – 24:6, Deposition of Penny Smit attached hereto as Exhibit P, pp. 27:3 – 23, 29:9 - 13.]

11.     Because Mr. Edwards did not comply with Officer Sugars' orders, Officer Sugars attempted to break the driver's side window with his flashlight, but was unable to do so.   [Ex. A, pp. 46:23 – 47:1, Ex. M, pp. 23:19: - 25:16.]

12.     Mr. Edwards then looked at Officer Sugars and said "fuck you," after which Officer Sugars turned to the other officers and asked for a baton.   [Ex. A. p. 53:5 – 19, Ex. M, pp. 23:19: - 25:16, Exhibit O, pp 23:9 – 24:6.]

13.     It was Officer Sugars plan to break the window with the baton, unlock the vehicle and access the driver.   [Ex. A, p. 69:1-5, Ex. M, pp. 23:19: - 25:16.]

14.     Officer Sugars again attempted to get Mr. Edwards to comply with his orders and, because nothing else was working, Officer Sugars said that if Mr. Edwards didn't comply, he was going to get shot.   [Ex. 56:2 – 58:18, Ex. M, pp. 23:19: - 25:16, Exhibit O, pp. 27:14: - 20, Ex. P, pp. 27:27:24 – 28:5, 39:16 – 40:3.]

15.     Mr. Edwards then said "Fuck you, bitch.  Shoot me," put his head against the window where Officer Sugars' gun was pointed and, again, did not comply with Officer Sugars order.  [Ex. A, pp. 70:5 – 15, Ex. M, pp. 23:19: - 25:16, Exhibit O, pp 23:9 – 24:6, Ex. P, pp. 29:14 – 30:8, 38:24 – 39:5.]

16.     In the interim, a baton was thrown to Officer Sugars; it hit the top of Mr. Edward's vehicle, rolled off the car and landed on the ground by the Cadillac's front tire.  [Ex. A, 58:19 – 61:1, Ex. M, pp. 23:19: - 25:16.]

17.     Officer Sugars, holstered his weapon, reached down to retrieve the baton, and while he was bent over, heard the Cadillac's engine "rev", saw the vehicle reverse two feet and heard shots come from somewhere behind him.  [Ex. A, p. 61:3-66:10, 68:2 – 21, Ex. B p. 85:22 – 86:7, Ex. F.]

18.     When Officer Sugars looked up, the Cadillac had traveled approximately ten feet from its initial location.  [Ex. A, pp. 66:22 – 68:1, Ex. F.]

**Defendant Cater and Officer Riley**

19.     During Officer Sugars' interaction with Mr. Edwards, Sergeant Cater and Officer Riley came on the scene.  [Ex. A, p. 54:2 – 24,

20.     On the night of incident, Defendant Cater was a field training officer, training Officer Riley, a probationary officer.  [Ex. B p. 33:14 – 34:6, Ex. C, p. 8:12 - 24]

21.     Upon arrival at 1304 Franklin Street, Defendant Cater and Officer Riley did not know whether the car was stolen and did not know if the driver had a relationship with the residents at 1304 Franklin Street. They did know that Mr. Edwards eluded and fled from the police.  [Ex. B, pp. 117:1 – 120:1, Ex. C, pp. 53:1 – 54:10]

4

22.     That said, Defendant Cater did not exit his vehicle with his weapon drawn.   [Ex. B, pp. 59:15 – 18, 60:1-2, Ex. F.]

23.      When Defendant Cater exited his vehicle at 1304 Franklin Street, he believed that Mr. Edwards was going to exit the car and run for the house.   However, when Defendant Cater realized that Mr. Edwards did not leave his vehicle, he moved behind the vehicle, within less than a foot of the rear passenger side, and drew his weapon.   [Ex. A, p. 54:2 – 24, Ex. B, p. 60:8 – 61:13, 73:5 – 74:8, 75:16, 80:11 – 15, 99:14-23, 116:17 – 24, Ex. J, pp. 28:20 – 31:18.]

24.     Upon exiting his vehicle, Officer Riley positioned himself behind the Cadillac at the back driver's side.   [Ex. A, p. 54:2 – 24, Ex. C, p. 39:7 -13, Ex. J, pp. 28:20 – 29:6.]

25.     Officer Riley observed Mr. Edwards put the car in gear and observed the brake lights come on and heard the car "rev" before Mr. Edwards reversed the car at a rapid pace.   [Ex. C, pp. 116:19 – 117:1, 119:1 – 13.]

26.     Just before Mr. Edwards reversed his car at a rapid pace, Defendant Cater ordered him not to move.   [Ex. B, p. 97:5-9, See video footage attached here to as Exhibit G.]

27.     Defendant Cater was hit by the reversing Cadillac and struggled to remain standing. [Ex. A, p. 61:3-66:10, 68:2 – 21, Ex. D, pp. 95:17 – 96:6, Ex. J, pp. 33:20 – 34:8, 41:21 – 24, 61:13-19, 62:2-6.]

28.     As a result, Officer Cater, while backpedaling, fired six consecutive shots at Mr. Edwards from the back passenger side of the car.   [Ex. B, 72:17 – 77:18, 80:16 – 21, Ex. J, pp. 33:20 – 34:8, Ex. J., pp. 35:17 – 36:1, Deposition of Emily Reed attached hereto as Exhibit N, p. 43:13- 17, Ex. O: p. 31:14-19.]

29.     Defendant Cater remained behind the Cadillac the entire time he was firing his weapon.   [Ex. B, 106:2 – 10; Ex. C, 115:3 – 11, See video attached hereto as Group Ex. H.]

30.     When Defendant Cater fired the shots, Officer Riley was to Defendant Cater's left behind the Cadillac; Officer Riley was within arms' length of Defendant Cater.   [Ex B, pp. 85:8 – 17, 89:7-17]

31.     At the time Officer Cater fired at the Cadillac, he believed Mr. Edwards was using his car as a deadly weapon and was attempting to run him and the other officers over; Defendant Cater fired to protect himself, Officer Riley and Officer Sugars from being run over by Mr. Edwards.   [Ex. B, pp. 120:2 – 122:1]

32.     Officer Riley did not fire any shots because Officer Sugars was in his crossfire, and he wasn't able to take the shot safely.   [Ex. B, p. 89:7-17, Ex. C, 98:4-12.]

33.     After the shots were fired, Defendant Cater saw Defendant Edwards apply the brake and put the Cadillac in gear. [Ex. B, pp. 76:22 – 77:22]

34.     From the time Mr. Edwards entered the driveway at 1304 Franklin until the first shot was fired was approximately 45 seconds.   [Ex. F.]

**The officers' post incident actions**

35.     After hearing the shots, Deputy Coutts observed Mr. Edwards go limp in the driver's seat.   [Ex. D, 99:6 – 7]

36.     Officer Sugars, with the help of Whiteside County Sheriff Deputy Elder, eventually pulled an unresponsive Mr. Edwards from the Cadillac. [Ex. A, pp. 86:10 – 89:4, 90:3-13, Ex. C, 112:7 – 14, Deposition of Deputy Rollie Elder attached hereto as Exhibit E, pp. 36:12 – 24, 39:15-19, Ex. J. pp. 39:4-40:15, Ex. L, pp. 36:22 – 37:1, Ex. M, p. 36:10 – 37:23, Ex O, pp. 33:22 – 34:1.]

37.     Within a minute or two, Deputy Elder and Deputy Coutts starting rendering first aid, including CPR and using an AED; they continued to administer CPR until the arrival of the

paramedics. [Ex. A, p. 89:2 – 13, Ex. C, p. 113:5 – 114:5; Ex. D, pp 98:13 – 99:15; Ex. E, p. 36:12 – 16; Ex. E, pp. 39:21 – 16, See video attached hereto as Group Exhibit I, Ex. J. pp. 39:4-40:15, Ex. L, pp. 36:22 – 37:1, Ex. M, p. 36:10 – 37:23, Ex O, pp. 33:22 – 34:14.]

38.     Once on the ground, Mr. Edwards did not move. [Ex. C, p. 112:15-17.]

39.     Mr. Edwards appeared to take an irregular gasping breath within the first few seconds on the ground, however thereafter, he did not speak, had no pulse and was not breathing. [Ex. C, p. 112:18 – 113:11, Ex D, pp. 99:21 – 101:5, 117:23 – 118:9, Ex. E, pp. 44:9 – 47:1, 55:19 – 57:16.]

40.     Deputy Elder believed Mr. Edwards died immediately after the shots were fired. [Ex. E, pp. 42:9 – 43:10

**Witnesses at the scene**

41.     Witnesses at the scene saw the Cadillac's brake lights come on and saw the Cadillac backing up. [Ex. M, pp. 31:12 – 32:4, Ex. N, pp. 26:8 – 27:7, 62:14-63:1, Ex. O, p. 29:8 -11, Ex. P, p. 30:9 - 19.]

42.     Several witnesses heard the Cadillac engine's "rev" and stated that the Cadillac accelerated while in reverse. [Ex. D, 96:7-10, 113:20 – 22, Ex. K, pp. 22:6 – 14, 28: 14-29:9, Ex. L, pp. 23:15 – 24:2, 30:12 – 31:4, 36:21 – 38:4, 40:21 – 42:8, 56:4-5, Ex. M, pp. 23:19: - 26:3, 32:1 – 33:9, 62:12 – 20, Ex. O, p. 32:16 – 24, Ex. P, pp. 30:22 – 31:8.]

43.     Witnesses at the scene believed that when Mr. Edwards reversed the Cadillac, that the officers, including Defendant Cater, were in danger of being hurt or killed. [Ex. D, 95:8-21, Ex E. p. 36:5-8, Ex. J. pp. 43:2 – 44:4, 62:2-6, Ex. K, pp, 29:10 – 30:2, Ex. L, pp. 40:21 – 42:8, Ex. M, pp. 33:10 – 34:9; Ex. N, pp. 29:24 – 31:20, 62:14-63:8, Ex. O, pp. 29:21 – 30:18, Ex. P, p. 31:9 – 15, 38:6 – 10, 40:8 – 41:7, 72:20 – 73:8.]

**Medical Examiner**

44.     The medical examiner determined that Mr. Edwards' cause of death was four gunshot wounds to his back.   [Deposition of Dr. Mark Peters attached hereto as Exhibit Q, p. 43:7 – 6.]

45.     Mr. Edwards blood alcohol level was .189, approximately twice the legal limit. [Ex. Q. 6 – 14.]

46.     Mr. Edwards had also ingested marijuana.   [Ex, Q, p. 40:9 – 13]

47.     The medical examiner did not know whether Mr. Edwards died at the scene.   [Ex. Q, p. 12:20 -21.]

48.     The medical examiner did not know whether Mr. Edwards survived for any period of time after the shooting.   [Ex. Q, pp. 21:20 – 22:5, 32:4 – 22, 42:24 – 43:18.]

**The Whiteside County Attorney's Investigation**

49.     Whiteside County State's Attorney found that "Officer Cater's actions in discharging his weapon resulting in the death of Nathaniel T. Edwards is valid as self-defense" and did not pursue any charges against Officer Cater.   [Whiteside County State's Attorney's Investigation Results attached hereto as Exhibit R, p. 11.]

**Parties' Experts' Opinions**

50.     Plaintiff's expert, Chett Epperson, determined that "the fatal shooting of Nathaniel Edwards and the use of deadly force by Rock Falls Police Department [ . . . ] Sergeant Jonathan Cater was excessive, reckless and unjustified" and states that Sergeant Cater was standing next to the rear passenger side tire when he discharged his weapon [See Mr. Epperson's report attached hereto as Exhibit S, pp. 1, 19.)

51.     Based on the same factors, Defendants' experts, Michael Gerard and Dale Mann, opined differently.   Mr. Gerard opined that: (1) the actions of Officer Jonathan Cater were reasonable and complied with the standard of care for law enforcement use of force; (2) the level of force used by Officer Jonathan Cater was not excessive; (3) the level of force used by Officer Jonathan Cater was reasonable. Mr. Mann opined based on the ballistic evidence that Sergeant Cater discharged his weapon while behind the rear passenger side of the car.   [See Mr. Gerard's and Mr. Mann's expert reports attached hereto as Exhibits T and U, respectively.]

WHEREFORE, based on all the above, Defendants SERGEANT JONATHAN CATER and THE CITY OF ROCK FALLS, respectfully request that this Court grant their Rule 56 Motion for Summary Judgment.

Respectfully submitted,

SERGEANT JONATHAN CATER, and
THE CITY OF ROCK FALLS

By:    s/Deborah Anne Ostvig

Michael E. Kujawa, ARDC# 6244621
Deborah A. Ostvig, ARDC# 6287031
Schain, Banks, Kenny & Schwartz, Ltd.
70 W. Madison Street, Suite 5300
Chicago, Illinois 60602
Phone: (312) 345-5700
Fax: (312) 345-5701
mkujawa@schainbanks.com
dostvig@schainbanks.com
K:\103 - Edwards\Pleadings\MSJ\Defendants' 56.1 Statement of Material Facts -draft.docx